CHARLES R. FORBES *vs.* GORDON & GERBER, INC.

Suffolk.    April 13, 1937. — July 2, 1937.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Contract*, Construction. *Broker*, Commission. *Practice, Civil*, Requests, rulings and instructions. *Words*, "Sale," "Purchase."

A contract which provided that a corporation "in its discretion" was to make and qualify bids for purchase of materials brought to its attention by an agent and was to pay him half its net profits on such purchases, an amount equal to ten per cent of the price on each purchase to be paid him "at the time that such transaction is completed" and to be applied on account of his share of net profits, did not entitle the agent to a ten per cent payment upon a transaction where the corporation made a bid for a purchase which was accepted, but never completed the purchase because of its belief that a loss, not a profit, would result.

In actions heard without jury, the correct method to raise the question of law, whether the evidence warrants a finding for the plaintiff, is by a request for a ruling; in the district courts such request should comply with Rule 28 of the Municipal Court of the City of Boston (1932) and Rule 27 of the District Courts (1932). Per LUMMUS, J.

CONTRACT. Writ in the Municipal Court of the City of Boston dated March 5, 1936.

The action was heard by *Adlow*, J., who found for the plaintiff in the sum of $4,125. A report to the Appellate Division was ordered dismissed. The defendant appealed.

*Lee M. Friedman*, (*F. L. Kozol* with him,) for the defendant.

*E. M. Dangel*, (*L. E. Sherry & S. Andelman* with him,) for the plaintiff.

LUMMUS, J. This is an action by an agent for a commission of ten per cent on the purchase for the defendant of a lot of railroad rails. There was a written agreement between the parties, dated December 11, 1935. By it the plaintiff was employed "for the purpose of the purchase and/or sale of materials dealt in by the [defendant] corporation, at such prices, terms and conditions as may be de-

termined and decided upon by the corporation." The defendant agreed, "in its discretion," to make reasonable bids upon such materials as might be brought to its attention by the plaintiff, and "in its discretion" to fulfil "such requirements as may be necessary to qualify such bids." The plaintiff was to receive an amount equal to half the net profits made by the defendant upon sales and purchases in which the plaintiff should be concerned. The contract further provided: "(4) The corporation agrees to pay to the said Forbes an amount of money equal to 10% of the amount of any sale and/or purchase at the time that such transaction is completed, which amount shall be credited against and deducted from the 50% share of the said Forbes as hereinabove provided . . . ; said payment of 10% is to be made to Forbes as soon as the purchase price for any materials purchased by the corporation shall be paid for by it or as soon as the corporation shall receive payment for any materials sold by it. The said Forbes agrees that in the event of any transaction resulting in a loss to the corporation that any advance made to him by the corporation shall be deducted from the share of the profits to which he shall be entitled. . . . The corporation agrees to make payments of the said share of said profits to said Forbes when and as the same are received by the corporation."

There was evidence of the following facts: The plaintiff discovered that the Southern Railway Company was asking for bids upon steel rails which it was selling, as scrap, free on board at various points on its line. Payment was expected "at the time shipping directions are furnished." By authority of the defendant, the plaintiff bid for a large quantity of rails $13.75 a ton f.o.b. Pittsburgh, which apparently was not on the line of the Southern Railway Company. That company, however, issued a written "award" to the defendant, dated January 17, 1936, in which the price was stated as "$13.75 Pittsburgh or 11.00 So. Ry. tracks" and the terms as "Delivered, F.O.B. cars  As shown above." The "award" provided that "this award is subject to cancellation at our option

if shipping directions, or cash payment, are not received within ten (10) days from its date." On January 20, 1936, the defendant told the plaintiff by telephone that it wished the rails delivered f.o.b. Pinner's Point, Virginia, a point on the line of the Southern Railway Company, at $11 a ton.

On January 24, 1936, however, the defendant wrote to one Finard, who apparently was associated with the plaintiff, complaining that the defendant faced a loss on the bid that had been made. The defendant did not send the purchase price or shipping instructions to the Southern Railway Company or the plaintiff. The Southern Railway Company cancelled the "award" on February 6, 1936, and the transaction was at an end. There was no delivery, no payment, and of course no profit.

The judge found for the plaintiff. He found "that the transaction was completed in every respect except that the defendant refused to give shipping instructions to the seller or to make payment for rails and that wilful refusal of the defendant prevented completion of the transaction." The Appellate Division dismissed a report, and the defendant appealed to this court.

What the plaintiff sought in this action was not half the profits, for there were none, nor damages for breach of an agreement by the defendant to make good its bid, but the ten per cent of the amount of "any . . . purchase" which was payable "at the time that such transaction is completed" or, as otherwise stated in the written agreement, "as soon as the purchase price for any materials purchased by the corporation shall be paid for by it."

The paragraph of the written agreement that comes nearest to contemplating what happened in this case is the one numbered (2), by which the defendant agrees to "make reasonable bids" and to "fulfill such requirements as may be necessary to qualify such bids," its agreement being restricted, however, in each instance by the words "in its discretion." The only remedy of the plaintiff for the failure of the defendant to bid on goods called to its attention by the plaintiff was to terminate the agreement at his option. We need not consider whether, as the

Appellate Division thought, the defendant reserved discretion only as to the making and preliminary qualification of bids, and by inference agreed absolutely to make good its bids once made and qualified. This action is not one for damages for breach of such an agreement.

This case turns upon the construction of paragraph numbered (4). It is true that the words "sale" and "purchase" may mean contract to sell or purchase. *Walker* v. *Russell*, 240 Mass. 386, 389, 390. *Buono* v. *Cody*, 251 Mass. 286, 290. But in construing those words, and the accompanying expressions making the ten per cent "of the amount of any . . . purchase" payable "at the time that such transaction is completed" and "as soon as the purchase price for any materials purchased by the corporation shall be paid for by it," we must keep in mind the insistence of the defendant that its agreement to make and qualify its bids was subject to "its discretion," and the fact that in the end the plaintiff was to benefit only by receiving a share of the profit resulting from his transactions as a whole. The case is unlike *Canton* v. *Thomas*, 264 Mass. 457, where the contract merely fixed a time for payment of a sum unconditionally due. The spirit of the agreement before us precludes an interpretation that would charge the defendant with an obligation to pay a commission of ten per cent if it should refuse to make good its bid, regardless of whether the transaction would result in a profit or a loss. In our opinion, the "transaction" was never "completed," within the words of the agreement, and the ten per cent never became due.

The defendant moved that a finding be made in its favor as matter of law. That motion doubtless was made because of confusion of the practice in district courts with that prevailing in jury cases (*Fisher* v. *Drew*, 247 Mass. 178, 181) in the Superior Court under Rule 71 of the Superior Court (1932). Possibly the motion could be given effect as a request. *Morse* v. *Homer's Inc.* 295 Mass. 606, 607. But the correct practice, in the district courts and in the Superior Court without jury, is to raise the question of law whether the evidence is sufficient to warrant a find-

ing for the plaintiff, by a request for a ruling that the evidence would or would not warrant such a finding. *Castano v. Leone*, 278 Mass. 429, 430, 431. *Ashapa v. Reed*, 280 Mass. 514, 516. *Bresnick v. Heath*, 292 Mass. 293, 298, 299. *Stowell v. H. P. Hood & Sons, Inc.* 288 Mass. 555. Compare *Leshefsky v. American Employers' Ins. Co.* 293 Mass. 164, 166, 167. Where the request is merely that a finding be made in favor of a defendant, the refusal of the request has been held equivalent to a ruling that the evidence warranted a finding for the plaintiff. *Commonwealth v. Hull*, 296 Mass. 327, 329. There must be added to the foregoing statement, however, the requirement of Rule 28 of the Municipal Court of the City of Boston (1932) and Rule 27 of the District Courts (1932), that "No review as of right shall lie to the refusal of a request for a ruling 'upon all the evidence' in a case admitting of specification of the grounds upon which such request is based unless such grounds are specified in the request, and then only upon the grounds so specified." Cases interpreting and applying this rule are collected in a footnote.*

There are in the present case requests for rulings made by the defendant which raise, in accordance with correct practice in district courts, the question of law whether the evidence warranted a finding for the plaintiff. Request numbered 6 is as follows: "Under the contract of December 11, 1935, the plaintiff was not entitled to any payment on account of a purchase by the defendant except 'at the time such transaction is completed' and since no purchases were completed the plaintiff cannot recover in this action." Request numbered 14 is that "Upon the law and all the evidence the court should find for the defendant" (see

---

* *Holton v. American Pastry Products Corp.* 274 Mass. 268. *Patterson v. Ciborowski*, 277 Mass. 260, 267. *Di Lorenzo v. Atlantic National Bank of Boston*, 278 Mass. 321, 325. *McSorley v. Risdon*, 278 Mass. 415, 417. *Castano v. Leone*, 278 Mass. 429, 431. *Breen v. Burns*, 280 Mass. 222, 228. *Rezendes v. Prudential Ins. Co.* 285 Mass. 505, 515. *Merchants Co-operative Bank v. Pasqualucci*, 289 Mass. 339, 345, 346. *Moss v. Grove Hall Savings Bank*, 290 Mass. 520. *Wainwright v. Jackson*, 291 Mass. 100. *Mericantante v. Boston & Maine Railroad*, 291 Mass. 261, 263. *McKenna v. Andreassi*, 292 Mass. 213, 215, 216. *Pacheco v. Medeiros*, 292 Mass. 416. *Kennedy v. Currier*, 293 Mass. 435, 439. *Magrath v. Sheehan*, 296 Mass. 263. *Garrett v. M. McDonough Co.* 297 Mass. 58.

*Commonwealth* v. *Hull*, 296 Mass. 327, 329), and specification (e) of the grounds of that request is that "No purchases were completed so the time never arrived when the plaintiff would be entitled to any money." The refusal to grant these requests was error. The order dismissing the report is reversed, and under G. L. (Ter. Ed.) c. 231, § 124, judgment is to be entered for the defendant.

*So ordered.*